Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MUSAB MOHAMMED MASMARI, | NO. C16-540RSM |
| Petitioner, | |
| v. | UNITED STATES' RESPONSE TO MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | |
| Respondent. | Noting date: June 10, 2016 |

**I.      Introduction.**

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Todd Greenberg, Assistant United States Attorney, files this Response to Defendant Musab Mohammed Masmari's Motion to Vacate Conviction and Sentence, pursuant to 28 U.S.C. § 2255.

For the reasons set forth below, all four of the claims raised by Masmari are meritless, and many of them are procedurally defaulted.  The Court should deny the motion in all respects.  The government submits that there is no need for an evidentiary hearing.

//
//
//

Response to Motion to Vacate Sentence - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II.     Procedural History.**

     **A.     Masmari's Criminal Conduct.**[1]

Masmari was convicted of the crime of Arson for setting a fire at a crowded gay night club in Seattle on New Year's Eve.  The victim night club, Neighbours, is Seattle's "largest and longest running gay club."  PSR ¶ 6.  On the night of December 31, 2013, Neighbors was full with 750 patrons celebrating New Year's Eve.  PSR ¶ 7.

Masmari entered Neighbors at approximately 11:30 p.m. that night, planning to commit an arson at the club.  PSR ¶ 8, PA ¶ 8.  As he entered Neighbors, Masmari was carrying a one-gallon container filled with gasoline.  PSR ¶ 8.  Masmari concealed the container in a shopping bag.  PA ¶ 8.

Shortly after midnight, Masmari doused a stairway in Neighbours with gasoline and lit it on fire.  PSR ¶ 7.  He left the gasoline container – still half-full – at the top of the stairway.  PA ¶ 8.  After setting the fire, Masmari left the club in a hurried manner and departed the area.  PA ¶ 8.  Neighbours employees and patrons saw the fire and were able to extinguish it before anyone was injured.  PSR ¶ 7.  Masmari acknowledged that when he set the fire, he "was aware that the fire . . . created a substantial risk of death and/or serious bodily injury to some or all of the patrons."  PA ¶ 8.  The fire caused significant property damage in an amount of $87,089.22.  Doc. 21 (Amended Judgment).

In an effort to identify the arson suspect, law enforcement authorities publically released surveillance video from Neighbours, depicting Masmari in the club.  PSR ¶ 9.  Masmari told one cooperating witness that he was concerned about the media coverage the arson was receiving.  PSR ¶ 10.  The next day, Masmari booked a one-way international airline ticket to Turkey, for a flight scheduled to depart two days later.  PSR ¶ 10.  Masmari was arrested on his way to the airport with all of his personal

---

[1] The facts set out in this section are based on the uncontested facts in the Presentence Report and the Statement of Facts in the Plea Agreement.

Response to Motion to Vacate Sentence - 2

1   belongings packed in his luggage.  PSR ¶ 10.  Although Masmari made no post-arrest

2   statements to law enforcement, a cooperating witness reported that "Masmari expressed

3   his dislike of homosexuals and thought they should be exterminated."  PSR ¶¶ 10, 18.

4            **B.      The Charges Against Masmari and his Guilty Plea.**

5            Masmari was arrested on February 1, 2014, and was initially charged with the

6   state crime of Arson in the First Degree in King County Superior Court.  On May 1,

7   2014, Masmari was charged in federal court by way of a one-count Information, alleging

8   the offense of Arson, in violation of Title 18, United States Code, Section 844(i).

9   Doc. 1.  This offense carries a maximum term of imprisonment of 20 years, and a five-

10  year mandatory minimum term of imprisonment.  18 U.S.C. § 844(i).

11           The following day, on May 2, 2014, Masmari entered a guilty plea to the Arson

12  charge pursuant to a written Plea Agreement (Doc 8).  The Plea Agreement contained the

13  parties' stipulation that the base offense level for the offense was 24, pursuant to USSG §

14  2K1.4(a)(1)(A), because Masmari "knowingly created a substantial risk of death or

15  serious bodily injury" to another person.  PA ¶ 9.  Under the Plea Agreement, the parties

16  were free to present arguments regarding the applicability of any other Sentencing

17  Guidelines provisions at the time of sentencing.  PA ¶ 9.  The Plea Agreement contained

18  the further provision that, at sentencing, both parties would recommend a custodial

19  sentence of 60 months.  PA ¶ 10.

20           **C.      The Sentencing Process.**

21                    ***1.      The Presentence Report.***

22           The Presentence Report set forth the offense conduct, as summarized above.  PSR

23  ¶¶ 6-11.  The Report also contained information about Masmari's criminal history and his

24  erratic behavior in the months prior to the arson at Neighbours.  PSR ¶ 45 ("In short, the

25  defendant's behavior had become very erratic and he clearly appeared to be very volatile

26  toward acquaintances and the police.").

27           The Presentence Report calculated the total offense level as 21, Masmari's

28  Criminal History Category as I, and the advisory Sentencing Guidelines range at 37-46

Response to Motion to Vacate Sentence - 3

months of imprisonment, although that range was superseded by the higher 60-month statutory mandatory minimum sentence.  PSR ¶ 56.

The Presentence Report noted the potential applicability of two additional provisions of the Sentencing Guidelines, although it recommended against applying either provision.  First, the Presentence Report addressed the potential for a three-level upward adjustment pursuant to USSG § 3A1.1, if Masmari's crime was committed with a hate crime motivation.  PSR ¶ 18.  Notwithstanding that one cooperating witness had reported Masmari expressed the view that homosexuals should be "exterminated," the Presentence Report did not recommend applying that enhancement because, in part, that provision requires proof beyond a reasonable doubt.  PSR ¶ 18.

The Presentence Report also noted that the Court could consider applying the cross reference provision of USSG § 2K1.4(c), using the higher base offense level for the potentially analogous offense of Attempted Murder.  Specifically, the Presentence Report stated:

> Given opinions the defendant may have expressed about gay people, and the target and timing of his crime, the Court might apply a cross-reference to another crime.  USSG § 2K1.4(c).  If the arson offense was intended to cause death or serious bodily injury, the Court may apply the guideline from Chapter Two, Part A that is most analogous; for example, the Guideline for Attempted Murder (2A2.1) has a base offense level of 33.  The resulting range would be 135 to 168 months.

PSR ¶ 57.

The Presentence Report did not identify any other factors that warranted a departure or variance from the applicable Sentencing Guidelines range.  PSR ¶¶ 70, 71.  The Presentence Report ultimately recommended a sentence of 60 months of imprisonment and a three-year term of supervised release.

### 2.    *The Victim Impact Statement.*

Appended to the Presentence Report was a written Victim Impact Statement from Shaun Knittel, an employee at Neighbours who wrote on behalf of the victims present at

Response to Motion to Vacate Sentence - 4

1 the club on the night of the arson.  The statement details how the Neighbours staff

2 successfully put out the fire and evacuated the crowded club within a few minutes after

3 Masmari started the fire, without any patrons suffering injuries.  Knittel went on to

4 passionately implore the Court to impose a much longer sentence than the 60 months

5 contemplated in the Plea Agreement:

> The whole thing was over within two-three minutes; everyone had exited
> the building and nobody was hurt.  But Masmari did not count on that
> happening.  Instead, he wanted to, according to statements he made to an
> FBI informant, "exterminate homosexuals."
>
> Exterminate?  That is something you do to roaches, rodents, and other
> vermin.  You do not, if you have any respect for human life, which he
> clearly does not because he set a building on fire that had over 750 people
> inside of it, with the intention of killing.  He is a danger to anyone if he is
> allowed to be a free man.  I am furious that he is not being charged with
> attempted murder – 750 counts – because that is what he tried to do.  Just
> because we stopped him from succeeding does not change the intent of his
> actions.
>
> This incident made a huge impact on me and everyone involved.  Musab
> Masmari is a menace, has a criminal record that shows he harasses people
> and returns for retribution for anyone who speaks out against him and
> violence.  He needs help.  I hope that while he serves his sentence he gets
> that help; but he should not be let out a day sooner if he has not.
>
> To conclude, I ask you judge, to look beyond this five year plea bargain.
> That is a slap in the face to the worth of our lives.  The man tried to murder
> us, plain and simple, and when he did not succeed and went on the run and
> tried to skip out of town and lied and the list goes on – he is rewarded with
> a maximum [sic] of five years sentence?  I am asking that you throw the
> book at this man to send a message that anti-Gay attacks, arson and hate are
> not tolerated in Seattle.  That you cannot do all of what he did and simply
> say you did it and get a slap on the wrist.  Five years is worse than a slap on
> the wrist, it is a slap in the face of all his victims.  I implore you, before he
> gets out and succeeds in exterminating any homosexuals; give him a
> minimum of 20 years in prison.  Doing anything less will send a message to
> three decades worth of Neighbours customers, every LGBT person in our
> city, and to criminals that you can, in fact, in Seattle try to murder 750
> people, fail at that attempt, go on the run, evade police and get caught and

Response to Motion to Vacate Sentence - 5

simply plea bargain your way out of all of that.  Please tell me that you are the kind of judge that makes decisions based on justice – not academic justice or red tape justice – but real justice; the kind we all always hope against hope our judges pos[sess] – and send him away for a very long time.  He tried to exterminate me, the man I love and a building full of community leaders, young professionals and more.  That doesn't sound like five years of crime – it sounds more like a lifetime.  Please do the right thing.

### 3.  *The Sentencing Recommendations of the Parties.*

The government filed a Sentencing Memorandum recommending a sentence of 60 months' imprisonment and a three-year term of supervised release, consistent with the provisions of the plea agreement.  Doc. 12.  The government made no objections to the presentence report and concurred with the Sentencing Guidelines calculations contained therein.

Masmari also filed a Sentencing Memorandum recommending that the Court impose the mandatory minimum 60-month term of imprisonment, and concurring with the Sentencing Guidelines calculations contained in the Presentence Report.  Doc. 13. Anticipating an issue that was later raised by the district court at sentencing, Masmari's Sentencing Memorandum also argued that the district court should not upwardly depart from the advisory sentencing range because the guidelines for the Arson offense fully accounted for all of the offense conduct in this case, and in particular for the risk of harm posed by the conduct.  Doc. 13 at 6-7.

Masmari's Sentencing Memorandum also raised the concern that the government was breaching its promise in the Plea Agreement to recommend a 60-month sentence. Specifically, in footnote 3, the memorandum states: "Although the government complies with the terms of the Plea Agreement in this case by recommending a sentence of 60 months, the defense is concerned that the government's argued rational for a variance may be considered as a suggested rationale for a sentence greater than 60 months of confinement suggested by [sic] Guidelines under USSG § 5G1.1."  Doc. 13 at 6.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Lastly, Masmari's Sentencing Memorandum also contained the express admission that, although Masmari was voluntarily intoxicated during the arson, he was legally responsible for the events in question. Doc. 13 at 4, footnote 2 ("Mr. Masmari's assertion of an alcoholic blackout does not undermine the knowing and voluntary nature of his admissions and acceptance of responsibility. . . . Mr. Masmari does not dispute that despite intoxication he had the requisite intent to set the fire."). Similarly, Masmari filed a written Statement of Responsibility in which he claimed that he was drunk at the time of the offense and did not "remember what happened," although he acknowledged that he was "the person responsible for the fire [at] Neighbours." Doc. 15.

### 4.    *The Sentencing Hearing.*

The sentencing hearing took place on July 31, 2014. The government presented its recommendation to the Court, outlining the facts of the case, the seriousness of the offense, and recommending that the Court impose the jointly recommended 60-month sentence. The government also expressly addressed Masmari's suggestion that the government was tacitly breaching the plea agreement, with the AUSA stating:

> And let me conclude by addressing one issue that the defense, I think, alluded to in their papers and mentioned to me before the hearing. And I want to be very clear about this. There is some concern that the government may be breaching the plea agreement, and really they haven't used that word, but I just want to be very clear to this court in our sentencing memorandum and in my remarks today, we are sticking with our recommendation in the plea agreement. We are recommending a 60-month sentence. . . . [] I'm confident that it was clear that we were advocating for a 60-month sentence, which was the agreement in the plea agreement. But I just wanted to reaffirm that to allay any concerns the defense may have, and make sure the court understood clearly the government's position here.

Sentencing Transcript at 8-9.

Next, Neighbours employee Shaun Knittel, the author of the above-referenced victim impact statement, addressed the court. Knittel emphasized how dramatically Masmari's offense had impacted all of the victims who were present at Neighbors on New Year's Eve, and the larger gay and lesbian community in the Seattle area, and again

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   implored the Court to impose a lengthy sentence.  Sentencing Transcript 9-11 ("I think

2   that that right there is way more than a five-year sentence.  I'm actually disgusted by the

3   five years as the maximum – or the minimum, I guess.  I know that members of the

4   community have expressed to me that they wanted me to come here today and say that.").

5          Masmari's counsel then addressed the Court and advocated for a 60-month

6   sentence.  Defense counsel urged the Court not to impose a higher sentence based on the

7   anti-gay statements attributed to Masmari by the cooperating witness, arguing that the

8   information was unreliable and untested by an evidentiary hearing.  Defense counsel also

9   argued that the Court should not impose a higher sentence based on the risk of harm

10  posed by Masmari's offense, because the risk already was adequately accounted for in the

11  base offense level for the Arson guideline.  Lastly, defense counsel argued that the

12  sentencing factors related to the defendant's background and characteristics supported the

13  imposition of the mandatory minimum 60-month sentence, including the defendant's

14  mental health and substance abuse problems.

15         The probation officer also addressed the court to explain the recommendation in

16  the Presentence Report.  Although the probation officer maintained his recommendation

17  of a 60-month sentence, he also identified various aggravating factors that would support

18  a longer sentence:

19         I've joined in the parties' recommendation for a term of imprisonment of
20         60 months, which is the mandatory minimum.  I did that with a fair bit of
        reservation, and in part because of the very close call, whether or not to
21         apply the hate-crime guideline. . .

22         Another factor that weighed into the guideline calculations themselves was
23         a very close call whether to apply, in the arson guideline, the cross-
        reference involving if death was intended to be caused, or serious bodily
24         injury is intended to be caused.  The guidelines allow for a cross-reference
        to the most analogous guideline.
25

26         If you did that and applied a second degree murder guideline, you'd have a
27         base offense level of 38.  You'd subtract 3 because it was an attempt under
        [USSG § 2X1.1], then an additional level for acceptance of responsibility.
28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

The guideline range could be 121 to 151. But we didn't go that way. It didn't seem contemplated. And the defendant's intent in this case is somewhat of a mystery, given the absence of the cooperating witness, as [defense counsel] has pointed out. Those factors led us to join in the parties' recommendation. But I think it was a very close call and there are very many, very many aggravating circumstances.

As Mr. Knittel pointed out, this case could have been a horrible, horrible tragedy in another realm. But there are aggravating circumstances that may not have been fully fleshed out in my report

Sentencing Transcript at 16-17.

### 5.     *The District Court's Imposition of the Sentence.*

The court then imposed sentence. The court first explained the "three-step process" it would follow in determining the sentence, specifically, (a) calculating the correct Sentencing Guidelines range for the offense of conviction; (b) reviewing any "traditional departure[s] or variances involved"; and (c) evaluating and weighing all of the sentencing factors set forth in Title 18, United States Code, Section 3553(a), and then determining a sentence that is "not more than necessary to effect sentencing."

The court adopted the uncontested Sentencing Guidelines calculations as set forth in the Presentence Report, including confirming that it would not apply either the hate crime enhancement (USSG § 3A1.1) or the attempted murder cross-reference provision (USSG § 2K1.4(c)), and calculated the advisory sentencing range at 37-46 months of imprisonment. The court then acknowledged that this sentencing range was superseded by the higher statutory mandatory minimum sentence of 60 months. The district court then turned to a discussion of the § 3553(a) sentencing factors.

The district judge ultimately imposed a sentence of 120 months of imprisonment. In doing so, the court preliminarily noted that "Mr. Masmari's guideline range [] could potentially very easily have been in the neighborhood of 120 to 150 months," based on the potential application of the cross-reference (USSG § 2K1.4(c)) to the attempted

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  murder guidelines.  The court then cited to USSG § 5K2.0(a)(3) as a "grounds for

2  departure from the recommended sentence."  The court continued:

> [§ 5K2.0(a)(3)] goes on to indicate that, "Departure may be warranted in an
> exceptional case, even though the circumstances that form the basis for the
> departure is taken into consideration in determining the guideline range, if
> the court determines that such circumstance is present in the offense to a
> degree substantially in excess of, or substantially below, that which
> ordinarily is involved in that kind of offense."
>
> The elements of arson, as the court has indicated earlier, using fire to cause
> damage to a building, and taking into account that substantial injury or
> death could have resulted, in this case the court finds that this is that
> exceptional case based on the number of people present inside that
> building, based on the fact that it was New Year's Eve, the busiest night of
> the year, based on the fact that if that fire had been just a few more seconds
> away from being uncontrolled, the court has no doubt that serious injury or
> death would have occurred to patrons of that club.
>
> The court is satisfied that this is the exceptional type of case that merits a
> departure.  The court will not impose the 60 months recommended but will
> impose something more closely to the range discussed for injury to persons.
> The court will impose 120 months of custodial time, with credit for all time
> served in this cause number up until now.

Sentencing Transcript at 22-24.

        The district court entered a Judgment on July 31, 2014.  Doc. 17.  The court

subsequently entered an Amended Judgment to reflect the restitution amount of

$87,089.22.  Doc. 21.

### 6.      *The Statement of Reasons Form.*

        On August 13, 2014, the district court entered a written Statement of Reasons

form as part of the judgment in this case.  In Section IV(C) of the Statement of Reasons

form, the court placed an "X" in the box stating, "The court departs from the advisory

guideline range for reasons authorized by the sentencing guidelines manual."  In Section

V of the form, the court indicated that it departed above the advisory guideline range

pursuant to USSG § 5K2.0, and explained the factors justifying the departure as follows:

Response to Motion to Vacate Sentence - 10

This sentencing involved an application of the Arson guideline (§ 2K1.4). The case involved numerous aggravating facts that were not accounted for or considered in the application of the guidelines. The fire was deliberately set on New Year's Eve in a club crowded with over 700 people, all of whom could have been killed but for the actions of quick thinking staff. While the hate crime guideline was not applied, the Court notes that the club was a gathering place for Seattle's gay community. The offense involved substantial planning, and the defendant attempted to flee the country after his picture appeared on the news. These are all facts that serve as aggravating factors not otherwise taken into account in the applicable guideline. An upward departure, pursuant to § 5K2.0 was appropriately imposed.

### D.    Masmari's Ninth Circuit Appeal.

Masmari filed a direct appeal with the Ninth Circuit Court of Appeals. His appeal primarily attacked the reasonableness of the sentence imposed by the district court. Masmari also argued on appeal that the government breached the plea agreement by implicitly advocating for a sentence of greater than 60 months. In this regard, Masmari specifically argued:

> [G]iven that the statutorily required mandatory minimum had already been established as sixty months, under the United States Sentencing Guidelines (USSG), Section 5G1.1(b), the Defense was concerned that the Government was implicitly urging the Court to consider a sentence above this statutory minimum. . . . The Defense remains concerned that there was a breach of the Plea Agreement, and any breach that is found by this Court should also result in an automatic resentencing.

Reply Brief at 4-6 (citing *United States v. Mondragon*, 228 F.3d 978 (9th Cir. 2000)).

After holding an oral argument in the case, the Ninth Circuit rejected each of Masmari's claims and affirmed the sentence by way of an unpublished Memorandum Opinion. *United States v. Masmari*, 609 Fed. App. 939 (2015).

### III.   Legal Standards Governing the Issues Raised in Masmari's § 2255 Motion.

### A.    The Doctrine of Procedural Default.

It is well-settled law that a claim may not be raised in a Section 2255 motion if the defendant had a full opportunity to be heard during the trial phase and on direct appeal.

*See Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003).  It is also well-settled that where a defendant fails to raise an issue before the trial court, or presents the claim but then abandons it, and fails to include it on direct appeal, the issue is deemed "defaulted" and may not be raised under Section 2255 except under unusual circumstances.

> [A] prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim.  If the claim was raised and rejected on direct review, the habeas court will not readjudicate it absent countervailing equitable considerations; if the claim was not raised, it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations (e.g., actual innocence or cause and prejudice, *see United States v. Frady*, 456 U.S. 152 (1982)).

*Withrow v. Williams*, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring).

There are two means by which a defendant may overcome procedural default and have the merits of a claim decided by the court.  First, a defendant who failed to raise an issue at trial or on direct appeal may pursue the claim under Section 2255 only if he demonstrates sufficient "cause" for the default and "prejudice" resulting from it.  *Bousley v. United States*, 523 U.S. 614, 622 (1998). A defendant is required to show both cause and actual prejudice.  *United States v. Frady*, 456 U.S. 152, 167 (1982).  This exception imposes "a significantly higher hurdle" than the plain error standard set forth in Federal Rule of Criminal Procedure 52 and *United States v. Olano*, 507 U.S. 725 (1993).  *See Frady*, 456 U.S. at 166.  The second means by which procedural default may be excused is where a defendant establishes actual innocence.  *Bousley*, 523 U.S. at 622.

**B.    The *Strickland* Ineffective Assistance of Counsel Doctrine.**

The standards to be applied to ineffective assistance claims are those defined in *Strickland v. Washington*, 466 U.S. 668 (1984).  Such a claim has two components.

First, the "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  To prevail on this prong, a defendant first must show that "in light of all the circumstances, the identified

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   acts or omissions were outside the wide range of professionally competent assistance."

2   *Strickland*, 466 U.S. at 690.  Under the performance prong of *Strickland*, review of

3   counsel's performance is highly deferential and there is a strong presumption that

4   counsel's strategy and tactics fall within the wide range of reasonable representation.

5   *United States v. Cochrane*, 985 F.2d 1027, 1030 (9th Cir. 1993).  Simply put, the

6   presumption is that counsel was competent.  *Id.*

7       Second, counsel's error must have prejudiced the defendant.  Deficient

8   performance prejudices the defendant if there is a "reasonable probability that, but for

9   counsel's unprofessional errors, the result of the proceedings would have been different."

10  *Strickland*, 466 U.S. at 694.  A "reasonable probability" is a probability that is sufficient

11  to undermine confidence in the outcome.  "This requires showing that counsel made

12  errors so serious that counsel was not functioning as the 'counsel' guaranteed the

13  defendant by the Sixth Amendment."  *Id.* at 687.

14      **C.    The Law of the Case Doctrine.**

15      "The law in this circuit is clear that when a matter has been decided adversely on

16  appeal from a conviction, it cannot be litigated again on a § 2255 motion."  *Odom v.*

17  *United States*, 455 F.2d 159, 160 (9th Cir. 1972).  This doctrine has been applied

18  consistently by the Ninth Circuit in rejecting attempts by petitioners to re-litigate issues

19  via § 2255 motions that they had raised unsuccessfully on direct appeal.  *See, e.g. United*

20  *States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999) ("In this case, Scrivner's Fifth

21  Amendment claim was presented to the Ninth Circuit on direct appeal . . . and rejected on

22  the merits.  That decision is binding on our resolution of the [§ 2255] case."); *United*

23  *States v. Redd*, 759 F.2d 699, 700-01 (9th Cir. 1985) ("Redd raised this precise claim in

24  his direct appeal, and this court expressly rejected it.  Therefore, the claim cannot be the

25  basis of a § 2255 motion.").  *See also United States v. Nguyen*, 2013 WL 2151558 at *6

26  (E.D. Cal. 2013) (citing similar cases).

27  //

28  //

Response to Motion to Vacate Sentence - 13

1

**IV.    The Court Should Reject All of Masmari's Claims.**

2

3
     **A.    Masmari's First Claim – that Defense Counsel Should Have Pursued Mental Health and Voluntary Intoxication Defenses – Fails on the Merits.**

4

5
     The first claim raised in Masmari's motion is that his trial counsel was ineffective

6
for advising him to enter a guilty plea to the crime of Arson (18 U.S.C. § 844(i)).

7
Masmari specifically claims that he could not have had the "knowing and malicious"

8
*mens rea* required by the statute, due to his alleged "documented history of mental health

9
problems" and the fact that he was voluntary intoxicated at the time of the offense.

10
Therefore, Masmari claims that his counsel should have pursued these defenses in lieu of

11
advising him to plead guilty.  Motion at 2.  This claim is meritless, and it fails both

12
factually and legally.

13
     With respect to Masmari's mental health, although the motion references his

14
"documented history" of mental health problems, Masmari has not provided any evidence

15
to substantiate these alleged problems.  In fact, the only information in the record

16
regarding Masmari's mental health is contained in the presentence report, which

17
expressly contradicts Masmari's present claim: "Counsel has indicated that a mental

18
health assessment is pending.  To date, *Mr. Masmari states he has no history of treatment*

19
*for any mental health condition and has no particular diagnosis*."  PSR ¶ 44 (emphasis

20
added).  Therefore, there is no evidence to support Masmari's claim that he suffered from

21
any mental illness to an extent that he would have lacked the capacity to form the

22
requisite *mens rea* to commit the crime of Arson.

23
     In terms of Masmari's voluntary intoxication, there is no dispute that Masmari

24
was, in fact, voluntarily intoxicated on the night of the Arson.  But this fact has no

25
bearing on Masmari's capacity to form the requisite *mens rea.*  It is well established that

26
voluntary intoxication is only a defense to a specific intent crime, and not to a general

27
intent crime.  *United States v. Burdeau*, 168 F.3d 352, 356 (9th Cir. 1999); *United States*

28
*v. Meeker*, 527 F.2d 12, 15 (9th Cir. 1975).  The federal crime of Arson is a general intent

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

crime. *United States v. Jane Doe*, 136 F.3d 631, 635-36 (9th Cir. 1998) (holding at common law the crime of arson is a general intent crime, and that the use of the word "maliciously" in the federal arson statute did not change it to a specific intent crime). Therefore, the defense of voluntary intoxication was not available to Masmari in this case. Moreover, Masmari made factual admissions during these proceedings – in both his Sentencing Memorandum and his personal Statement of Responsibility – that his voluntary intoxication did not rise to the level of undercutting his legal responsibility for the crime. Sentencing Memorandum at 4, footnote 2 ("Mr. Masmari's assertion of an alcoholic blackout does not undermine the knowing and voluntary nature of his admissions and acceptance of responsibility. . . . Mr. Masmari does not dispute that despite intoxication he had the requisite intent to set the fire."); Statement of Responsibility (claiming that he was drunk at the time of the offense and did not "remember what happened," but acknowledging that he was "the person responsible for the fire [at] Neighbours.").

For all of these reasons, Masmari's defense counsel was not ineffective for failing to advise Masmari to pursue mental health and voluntary intoxication defenses in lieu of pleading guilty in this case.

**B.      Masmari's Second Claim – that his Guilty Plea was not Knowing and Voluntary – is Procedurally Barred and has no Factual Support in the Record.**

Masmari's second claim is that his guilty plea was not knowing and voluntary because he was suffering from various alleged medical, mental health, and substance abuse issues during the plea hearing. Masmari claims that his defense counsel was ineffective for allowing him (and allegedly forcing him) to go through with the plea hearing.

This claim is procedurally barred, because Masmari had every opportunity to raise this issue on his direct appeal, but failed to do so. Masmari makes no showing of

Response to Motion to Vacate Sentence - 15

1  "sufficient cause" to excuse this procedural default, and therefore this claim should be

2  denied by the Court.

3       Moreover, this claim fails on the merits both factually and legally.  First, Masmari

4  provides no evidence in support of his belated and self-serving claims that he was not of

5  sound mind during the plea colloquy.  And the record belies his present contentions.

6  Although there is not a transcript of the plea colloquy, the hearing is available for the

7  Court to review on audio recording.  The Honorable Richard A. Jones presided over the

8  guilty plea hearing.  The record establishes that the district judge conducted a thorough

9  Rule 11 colloquy in this case, reviewing all of the material terms of the plea agreement

10 with Masmari, including the charge to which he was pleading guilty and the maximum

11 possible penalty, the rights he was giving up by pleading guilty, how the court would

12 determine Masmari's sentence under the advisory Sentencing Guidelines, and the factual

13 basis for the guilty plea.  Masmari confirmed his understanding of each of these

14 provisions of the plea agreement.  After observing Masmari and considering his

15 responses, the Judge Jones was satisfied Masmari's entry of the plea was made

16 knowingly and voluntarily.

17      Where the district court conducts a thorough Rule 11 hearing, this is strong

18 evidence that the defendant comprehended the plea agreement.  *Id.* (citing *United States*

19 *v. Signori*, 844 F.2d 635, 639 (9th Cir.1988) (upholding a district court's denial of a plea

20 withdrawal motion after a careful review of the Rule 11 hearing transcript); *United States*

21 *v. Castello*, 724 F.2d 813, 815 (9th Cir.1984) (upholding the denial of a plea withdrawal

22 motion where the district court conducted a "particularly searching" Rule 11 hearing);

23 *United States v. Rios-Ortiz*, 830 F.2d 1067, 1070 (9th Cir.1987) (stating that Rule 11

24 requirements "are designed to ensure that the criminal defendant who pleads guilty

25 understands exactly what the plea means"); *United States v. Cook*, 487 F.2d 963, 965 (9th

26 Cir.1973) (focusing on the thoroughness of the Rule 11 plea colloquy in a plea

27 withdrawal case).

28

Response to Motion to Vacate Sentence - 16

1      As a result, the court is entitled to credit Masmari's sworn statements during the

2  plea hearing over his self-serving written claims in support of his motion to vacate his

3  sentence. *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir.1987) ("Solemn

4  declarations in open court carry a strong presumption of verity."); *United States v.*

5  *Castello*, 724 F.2d 813, 815 (9th Cir.1984).  Moreover, a defendant's mere change of

6  heart or "buyer's remorse" about pleading guilty is not a basis to subsequently attack the

7  knowing and voluntariness of the plea.  *United States v. McTiernan*, 546 F.3d 1160, 1167

8  (9th Cir. 2008); *United States v. Turner*, 898 F.2d 705, 713 (9th Cir 1990).

9      There is simply no credible evidence to suggest that Masmari's guilty plea was

10  anything other than knowing and voluntary, and therefore there was nothing ineffective

11  about the defense counsel's performance in this regard, and certainly nothing

12  approaching the *Strickland* standard.  Masmari's second claim should be rejected.

13   **C.    Masmari's Third Claim – that his Counsel was Ineffective for Failing**
14   **to Argue that the Government Breached the Plea Agreement – is**
15   **Procedurally Barred and Inconsistent with the Record.**

16      Masmari's third claim is that his counsel was ineffective for failing to object to the

17  government's alleged breach of the plea agreement at the sentencing hearing.  This claim

18  should be rejected for two reasons.  First, the claim is procedural defaulted because, as

19  noted above, Masmari raised this very argument on direct appeal.  He is therefore barred

20  from relitigating the issue through his motion to vacate.  Second, the claim is factually

21  erroneous because his counsel did, in fact, raise the breach issue in district court.  As set

22  forth above, Masmari's attorney raised this issue in his sentencing memorandum, which

23  in turn caused the AUSA to address the issue at the sentencing hearing.  Because this

24  issue was raised in the district court (and again later on appeal), Masmari's counsel

25  obviously was not ineffective by failing to raise it.

26      In any event, the claim fails on the merits because there is no support in the record

27  for the contention that the government breached the plea agreement.  In both its written

28  materials and at the sentencing hearing, the government very clearly advocated for a 60-

month sentence, consistent with the terms of the plea agreement.  The record suggests that the 10-year sentence imposed by the Court was based *not* on some tacit urging by the government, but rather on the Court's independent evaluation of the statutory sentencing factors as applied to Masmari's case, with apparent weight being afforded to the words of the victim spokesman, Shawn Knittel, and the Probation Officer, both of whom provided the Court with extensive aggravating information the Court ultimately cited in support of the 10-year sentence imposed.  Masmari fails to establish that the government breached the plea agreement in this case.

> D.   **Masmari's Fourth Claim – that his Counsel was Ineffective for Failing to Object to Alleged Rule 32(h) Error – is Procedurally Barred and Fails Under the *Strickland* Test.**

Masmari's last claim is that the district court committed procedural error at the sentencing hearing by failing to provide adequate notice of its intent to depart from the Guidelines, as required by Federal Rule of Criminal Procedure 32(h), and that his counsel was ineffective for failing to object to this error.  This claim is procedurally barred, because Masmari litigated this claim – and lost – on direct appeal.

Because Masmari's defense counsel failed to object to the alleged Rule 32(h) error at the sentencing hearing, the Ninth Circuit review the claim on direct appeal under the plain error standard.  *See United States v. Masmari*, 609 Fed. Appx. 939.[2]  The Ninth Circuit's opinion suggested that there was no Rule 32(h) error here at all, because "the underlying purpose of Rule 32(h) – to ensure that issues with the potential to impact sentencing are fully aired – was served in this case. . ." *Id.*  But "even assuming that the district court failed to adhere to the strict letter of Rule 32(h)," the Ninth Circuit held that

---

[2] Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights.  If all of these conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Cruz-Perez*, 567 F.3d at 1146 n. 1 (citing *United States v. Maciel-Vasquez*, 458 F.3d 994, 996 n. 3 (9th Cir. 2006)).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Masmari was unable to show he suffered any "prejudice" as required under the plain
2   error standard.  As noted by the Ninth Circuit, all of the issues relevant to the district
3   court's upward departure were fully vetted at the sentencing hearing.  *Masmari* at 939-40
4   ("[T]he primary issue at sentencing was whether a longer sentence [than the 60-month
5   mandatory minimum] should be imposed.  The issue was thoroughly addressed in the
6   PSR, the parties' sentencing memoranda, and at the hearing.").  As a result, the Ninth
7   Circuit held that Masmari failed to establish prejudice under the plain error standard.
8        Masmari is now procedurally barred from relitigating this claim in a § 2255
9   motion.  And in any event, for the same reasons cited by the Ninth Circuit, Masmari is
10  unable to establish the prejudice prong of the *Strickland* test.  There is no difference in
11  the prejudice showings that must be made to establish a viable claim in both the plain
12  error and ineffective assistance contexts.  *See United States v. Dominguez Benitez*,
13  542 U.S. 74, 82-83 (2004) (the plain error prejudice standard derives from, and is
14  identical to, the prejudice showing necessary to establish an ineffective assistance of
15  counsel claim under *Strickland*); *see also Close v. United States*, 679 F.3d 714, 720
16  (8th Cir. 2012); *United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994); *United States v.*
17  *Alferahin*, 433 F.3d 1148, 1162 (9th Cir. 2006); *United States v. Bosch*, 914 F.2d 1239,
18  1247 (9th Cir. 1990).  Accordingly, if, as here, a defendant fails to show that an
19  unpreserved error rises to the level of plain error on direct appeal, he is precluded from
20  contending that trial counsel's failure to object was sufficiently prejudicial to support a
21  finding under *Strickland* that counsel was constitutionally ineffective.  *See Bennett v.*
22  *United States*, 663 F.3d 71, 89 (2d Cir. 2011).  This is because "[i]t would be nonsensical
23  if a petitioner, on collateral review, could subject his challenge of an unobjected-to error
24  to a lesser burden by articulating it as a claim of ineffective assistance."  *Gordon v.*
25  *United States*, 518 F.3d 1291, 1298 (11th Cir. 2008).
26       As a result, Masmari's fourth claim is procedurally barred and also fails on the
27  merits under the *Strickland* test.
28

Response to Motion to Vacate Sentence - 19

**V.     Conclusion.**

        For the reasons set forth above, all of the claims Masmari raises are procedurally barred and/or are meritless, and therefore the government respectfully requests that the Court deny the Motion in all respects.

        DATED this 13th day of May, 2016.

                                            Respectfully submitted,

                                            ANNETTE L. HAYES
                                            United States Attorney

                                             /s Todd Greenberg
                                            TODD GREENBERG
                                            MICHAEL DION
                                            Assistant United States Attorneys
                                            United States Attorney's Office
                                            700 Stewart Street, Suite 5220
                                            Seattle, Washington 98101-3903
                                            Phone: 206-553-2636
                                            E-mail: Todd.Greenberg4@usdoj.gov

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on May 13, 2016, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system.  I further certify that a copy of the foregoing

has been served upon Petitioner pro se by mailing a copy to:

        Musab Mohammed Masmari
        44359-086
        FCI Victorville Medium II
        13777 Air Expressway Blvd.
        Victorville, CA  92394


                        <i>s/ Janet K. Vos</i>
                        JANET K. VOS
                        Paralegal Specialist
                        United States Attorney's Office
                        700 Stewart, Suite 5220
                        Seattle, Washington 98101-1271

Response to Motion to Vacate Sentence - 21