UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MUSAB MOHAMMED MASMARI,

              Petitioner,

    v.

UNITED STATES OF AMERICA,

              Respondent.

CASE NO. C16-0540 RSM

ORDER DENYING PETITIONER'S
MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR
CORRECT SENTENCE BY A
PERSON IN FEDERAL CUSTODY

## I. INTRODUCTION

Before the Court is Petitioner's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  Dkt. # 1.  Petitioner Musab Mohammed Masmari challenges the 120-month sentence imposed on him by this Court after he pleaded guilty to one count of Arson in violation of 18 U.S.C. § 844(i).  Petitioner timely brought this motion, and now challenges his sentence on the basis of ineffective assistance of counsel.  After full consideration of the record and for the reasons set forth below, Mr. Masmari's § 2255 motion is DENIED.

///

///

///

///

///

## II. BACKGROUND[1]

Mr. Masmari was convicted of the crime of Arson for setting a fire at a crowded gay night club in Seattle on New Year's Eve.  The night club, Neighbours, is Seattle's "largest and longest running gay club."  Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #11 at ¶ 6.  On the night of December 31, 2013, Neighbors was full with 750 patrons celebrating New Year's Eve.  *Id.*, Dkt. #11 at ¶ 7.  Mr. Masmari entered Neighbours at approximately 11:30 p.m. that night, planning to commit arson at the club.  *Id.*, Dkt. #11 at ¶ 8 and Dkt. #8 at ¶ 8.  As he entered Neighbours, Mr. Masmari was carrying a one-gallon container filled with gasoline.  *Id.*, Dkt. #11 at ¶ 8.  Mr. Masmari concealed the container in a shopping bag.  *Id.*, Dkt. #8 at ¶ 8.

Shortly after midnight, Mr. Masmari doused a stairway in Neighbours with gasoline and lit it on fire.  *Id.*, Dkt. #11 at ¶ 7.  He left the gasoline container – still half-full – at the top of the stairway.  *Id.*, Dkt. #8 at ¶ 8.  After setting the fire, Mr. Masmari left the club in a hurried manner and departed the area.  *Id.*, Dkt. #8 at ¶ 8.  Neighbours employees and patrons saw the fire and were able to extinguish it before anyone was injured.  *Id.*, Dkt. #11 at ¶ 7.  Mr. Masmari acknowledged that when he set the fire, he "was aware that the fire . . . created a substantial risk of death and/or serious bodily injury to some or all of the patrons."  *Id.* Dkt. #8 at ¶ 8.  The fire caused significant property damage in an amount of $87,089.22.  *Id.*, Dkt. #21.

---

[1]  This background is drawn from the uncontested facts in the Presentence Report and the Statement of Facts in the Plea Agreement, as presented by the Government in its Response.  Dkt. #5 at 2-11.  Petitioner has failed to respond to the Government's brief and therefore presents no opposing facts.

In an effort to identify the arson suspect, law enforcement authorities publically released surveillance video from Neighbours, depicting Mr. Masmari in the club. *Id.*, Dkt. #11 at ¶ 9. The next day, Mr. Masmari booked a one-way international airline ticket to Turkey, for a flight scheduled to depart two days later. *Id.*, Dkt. #11 at ¶ 10. Mr. Masmari was arrested on his way to the airport with all of his personal belongings packed in his luggage. *Id.*, Dkt. #11 at ¶ 10.

Mr. Masmari was arrested on February 1, 2014, and was initially charged with the Washington State crime of Arson in the First Degree in King County Superior Court. On May 1, 2014, Mr. Masmari was charged in federal court by way of a one-count Information, alleging the offense of Arson, in violation of Title 18, United States Code, Section 844(i). Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #1. This offense carries a maximum term of imprisonment of 20 years, and a five-year mandatory minimum term of imprisonment. 18 U.S.C. § 844(i).

On May 2, 2014, Mr. Masmari entered a guilty plea to the Arson charge pursuant to a written Plea Agreement. Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #8. The Plea Agreement contained the parties' stipulation that the base offense level for the offense was 24, pursuant to USSG § 2K1.4(a)(1)(A), because Mr. Masmari "knowingly created a substantial risk of death or serious bodily injury" to another person. *Id.*, Dkt. #8 at ¶ 9. The Plea Agreement contained the further provision that, at sentencing, both parties would recommend a custodial sentence of 60 months. *Id.* at ¶ 10.

The Presentence Report calculated the total offense level as 21, Mr. Masmari's Criminal History Category as I, and the advisory Sentencing Guidelines range at 37-46

months of imprisonment, although that range was superseded by the higher 60-month statutory mandatory minimum sentence. *Id.*, Dkt. #11 at ¶ 56.  The Presentence Report also noted the potential applicability of two additional provisions of the Sentencing Guidelines, although it recommended against applying either provision. First, the Presentence Report addressed the potential for a three-level upward adjustment pursuant to USSG § 3A1.1, if Mr. Masmari's crime was committed with a hate crime motivation. Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #11 at ¶ 18.   Although one cooperating witness had reported that Mr. Masmari expressed the view homosexuals should be "exterminated," the Presentence Report did not recommend applying that enhancement because, in part, that provision requires proof beyond a reasonable doubt. *Id.*  The Presentence Report also noted that the Court could consider applying the cross reference provision of USSG § 2K1.4(c), using the higher base offense level for the potentially analogous offense of Attempted Murder. *Id.*, Dkt. #11 at ¶ 57.

The Presentence Report did not identify any other factors that warranted a departure or variance from the applicable Sentencing Guidelines range. *Id.*, Dkt. #11 ¶¶ 70-71.  The Presentence Report ultimately recommended a sentence of 60 months of imprisonment and a three-year term of supervised release.

Shaun Knittel, an employee at Neighbours, submitted a written Victim Impact Statement on behalf of the victims present at the club on the night of the arson.[2]  The

---

[2]  This statement is not currently in the record; however, the Undersigned references having read the statement prior to the Sentencing Hearing.  *See* CR14-0122RSM, *USA v. Masmari,* Dkt. #20 at 9:9-11.

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY - 4

statement detailed how the Neighbours staff successfully put out the fire and evacuated the crowded club within a few minutes after Mr. Masmari started the fire, without any patrons suffering injuries.  Mr. Knittel went on to implore the Court to impose a much longer sentence than the 60 months contemplated in the Plea Agreement.

The Government filed a Sentencing Memorandum recommending a sentence of 60 months imprisonment and a three-year term of supervised release.  *Id.*, Dkt. #12. The Government made no objections to the PSR and concurred with the Sentencing Guidelines calculations contained therein.  Mr. Masmari also filed a Sentencing Memorandum recommending that the Court impose the mandatory minimum 60-month term of imprisonment, and concurring with the Sentencing Guidelines calculations contained in the PSR.  Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #13.  In addition, Mr. Masmari argued that the Court should not upwardly depart from the advisory sentencing range because the guidelines for the Arson offense fully accounted for all of the offense conduct in this case, and in particular for the risk of harm posed by the conduct.  *Id.*, Dkt. #13 at 6-7.  Mr. Masmari's Sentencing Memorandum also raised the concern that the government was breaching its promise in the Plea Agreement to recommend a 60-month sentence. Specifically, Mr. Masmari argued: "Although the government complies with the terms of the Plea Agreement in this case by recommending a sentence of 60 months, the defense is concerned that the government's argued rational for a variance may be considered as a suggested rationale for a sentence greater than 60 months of confinement suggested by [sic] Guidelines under USSG § 5G1.1." Dkt. #13 at 6 fn. 3.  Lastly, Mr. Masmari acknowledged that, although he was

voluntarily intoxicated during the arson, he was legally responsible for the events in question. *Id.* at 4 fn. 2. Similarly, Mr. Masmari filed a written Statement of Responsibility in which he claimed that he was drunk at the time of the offense and did not "remember what happened," although he acknowledged that he was "the person responsible for the fire [at] Neighbours." *Id.*, Dkt. #15.

Mr. Masmari's sentencing hearing took place on July 31, 2014. The Government presented its recommendation to the Court, outlining the facts of the case, the seriousness of the offense, and recommending that the Court impose the jointly recommended 60-month sentence. The Government also expressly denied Mr. Masmari's suggestion that it was tacitly breaching the plea agreement. Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #20 at 8:11-9:4.

Next, Mr. Knittel addressed the Court. Mr. Knittel emphasized how Mr. Masmari's offense had impacted all of the victims who were present at Neighbours on New Year's Eve, as well as the larger gay and lesbian community in the Seattle area, and again asked the Court to impose a lengthy sentence. *Id.*, Dkt. #20 at 9:12-11:15. Mr. Masmari's counsel then addressed the Court and advocated for a 60-month sentence. *Id.*, Dkt. #20 at 11:18-15:7. Defense counsel urged the Court not to impose a higher sentence based on the anti-gay statements attributed to Mr. Masmari by the cooperating witness, arguing that the information was unreliable and untested by an evidentiary hearing. Defense counsel also argued that the Court should not impose a higher sentence based on the risk of harm posed by Mr. Masmari's offense, because the risk already was adequately accounted for in the base offense level for the Arson

guideline.  Lastly, defense counsel argued that the sentencing factors related to the defendant's background and characteristics supported the imposition of the mandatory minimum 60-month sentence, including the defendant's mental health and substance abuse problems.  *Id.*

The probation officer also addressed the court to explain the recommendation in the Presentence Report.  Although the probation officer maintained his recommendation of a 60-month sentence, he also identified various aggravating factors that would support a longer sentence.  Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #20 at 16:4-17:8.

The Undersigned then imposed the sentence.  The Undersigned first explained the "three-step process" he would follow in determining the sentence: (a) calculating the correct Sentencing Guidelines range for the offense of conviction; (b) reviewing any "traditional departure[s] or variances involved"; and (c) evaluating and weighing all of the sentencing factors set forth in Title 18, United States Code, Section 3553(a), and then determining a sentence that is "not more than necessary to effect sentencing."  *Id.*, Dkt. #20 at 17:10-20.  The Undersigned adopted the uncontested Sentencing Guidelines calculations as set forth in the Presentence Report, including confirming that he would not apply either the hate crime enhancement (USSG § 3A1.1) or the attempted murder cross-reference provision (USSG § 2K1.4(c)), and calculated the advisory sentencing range at 37-46 months of imprisonment.  The Undersigned then acknowledged that this sentencing range was superseded by the higher statutory mandatory minimum sentence of 60 months.  *Id.*, Dkt. #20 at 17:21-19:8.

The Undersigned then turned to a discussion of the § 3553(a) sentencing factors, ultimately imposing a sentence of 120 months of imprisonment.  *Id.*, Dkt. #20 at 21:15-20.  The Undersigned explained that had he applied the cross-referenced statues, the sentencing range could easily have been higher, and then indicated that departure from the sentencing guidelines was warranted in some cases.  The Undersigned found that "this is the exceptional type of case that merits a departure[,]" and imposed a higher sentence than that which had been recommended.  Case No. CR14-0122RSM, *USA v. Masmari*, Dkt. #20 at 22:2-24:11.

The Court entered a Judgment on July 31, 2014.  *Id.*, Dkt. #17.  The Court subsequently entered an Amended Judgment to reflect the restitution amount of $87,089.22.  *Id.*, Dkt. #21.  On August 13, 2014, the Undersigned entered a written Statement of Reasons form supporting the Judgment.  In Section IV(C) of the Statement of Reasons form, the Undersigned placed an "X" in the box stating, "The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual."  In Section V of the form, the Undersigned indicated that it departed above the advisory guideline range pursuant to USSG § 5K2.0, and explained the factors justifying the departure.[3]

Mr. Masmari then filed a direct appeal with the Ninth Circuit Court of Appeals.  *Id.*, Dkt. #18.  His appeal primarily focused on the reasonableness of the sentence

---

[3]  While the Government references this form, and the Court has no reason to doubt the accuracy of the reference, the Court also notes that this form is not contained in the record and the Government has not presented it as an Exhibit to its Response.

imposed by this Court.  *See id.*, Dkt. #23.  Mr. Masmari also argued on appeal that the Government breached the plea agreement by implicitly advocating for a sentence of greater than 60 months.  *See id.*  The Ninth Circuit denied the appeal and affirmed his sentence.  *Id.*, Dkt. #23.  The instant motion followed.

### III.  DISCUSSION

A  motion under 28 U.S.C. § 2255 permits a federal prisoner, in custody, to collaterally challenge his sentence on the grounds that it was imposed in violation of the Constitution or laws of the United States, or that the Court lacked jurisdiction to impose the sentence or that the sentence exceeded the  maximum authorized by law.  Petitioner challenges his sentence on the grounds that he received ineffective assistance of counsel during his trial.  The Court finds that Petitioner is not entitled to an evidentiary hearing in this matter because the Petition, files, and totality of the record conclusively demonstrate that Mr. Masmari is not entitled to relief.  *See United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).

### A.  Standard of Review for Ineffective Assistance Claims

Petitioner argues that he received ineffective assistance of counsel in four ways: 1) his lawyer improperly advised him to waive indictment and plead guilty to an Information when it was unlikely the Government could prove "knowing and malicious" intent; 2) his guilty plea was involuntary because strong medications precluded him from meaningfully consulting with counsel, counsel failed to request a competency hearing before he entered the plea, and counsel coerced him into providing false information to the Court in order for the Court to accept the guilty plea; 3) defense counsel failed to object to the Government's breach of the plea agreement; and 4) defense counsel failed to object to the Court's failure to comply with Federal Rules of Criminal Procedure 32(h).  Dkt. #1, Attachment at 2-5.

1   To establish a claim for ineffective assistance of counsel, Petitioner must prove (1) that

2   counsel's performance was deficient and, (2) that the deficient performance prejudiced the

3   defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  In order to establish that

4   counsel's performance was deficient, a petitioner must show that counsel's performance fell

5   below an objective standard of reasonableness.  *Id.* at 688.  There is a strong presumption that

6   counsel was within the range of reasonable assistance.  *Id.* at 689.  In order to establish that

7   counsel's performance prejudiced the defense, a petitioner "must show that there is a

8   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

9   would have been different.  A reasonable probability is a probability sufficient to undermine

10  confidence in the outcome." *Id.* at 694.

11  **B.  Full and Fair Opportunity to Litigate**

12  As an initial matter, the Court addresses the Government's argument that the majority

13  of Mr. Masmari's claims are barred because he had a full and fair opportunity to be heard

14  during his trial court proceedings and on direct appeal.  Dkt. #5 at 15-19.  The Court agrees.  In

15  *Kaufman v. United States,* 394 U.S. 217, 89 S. Ct. 1068, 22 L. Ed. 2d 227 (1969), the Supreme

16  Court stated that a District Court has "discretion" to refuse a claim brought under § 2255 that

17  has already been raised and resolved against the prisoner on direct review.  *Id.* at 227, n. 8.

18  Since *Kaufman,* courts have uniformly held that, absent countervailing considerations, "district

19  courts may refuse to reach the merits of a constitutional claim previously raised and rejected on

20  direct appeal." *Withrow v. Williams*, 507 U.S. 680, 721, 113 S. Ct. 1745, 123 L. Ed. 2d 407

21  (1993).  Thus, "a prior opportunity for full and fair litigation is normally dispositive" of a §

22  2255 claim.  *Id.*  Indeed, a habeas petitioner may overcome this rule only where "1) the first

23  decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the

24

1   evidence on remand is substantially different; 4) other changed circumstances exist; or 5)

2   manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th

3   Cir. 1997).  Absent one of these conditions, failure to apply this "law of the case" doctrine

4   constitutes an abuse of discretion. *Alexander*, 106 U.S. at 876 (citing *Thomas v. Bible*, 983

5   F.2d 152, 155 (9th Cir. 1993)).

6           None of the conditions exist in this case.  Moreover, Petitioner was fully able to be

7   heard on his ineffective assistance claims with respect to a knowing and voluntary plea, that the

8   government breached the plea agreement, and that his counsel failed to object to an alleged

9   32(h) violation.  The Ninth Circuit Court of Appeals considered and rejected the latter two

10  claims, and Plaintiff failed to raise his arguments with respect to a knowing and voluntary plea

11  even though he had the opportunity to raise such a claim.  Petitioner has presented no argument

12  or evidence that he was precluded from litigating his claims fully and fairly in the Ninth

13  Circuit, and therefore he may not use a 2255 petition to re-litigate the same arguments for the

14  second time.

15          **C.  Ineffective Assistance – Knowing Guilty Plea**

16          With respect to Plaintiff's claim that his counsel was ineffective for improperly advising

17  him to waive indictment and plead guilty to an Information when it was unlikely the

18  Government could prove "knowing and malicious" intent, the Court is not persuaded.  Mr.

19  Masmari alleges that his "documented history of mental health problems, and substance abuse,"

20  precluded him from possessing the requisite intent to commit Arson as charged.  Dkt. #1,

21  Attachment at 2-3.  However, Mr. Masmari has not provided any evidence to substantiate these

22  alleged issues.  Indeed, Mr. Masmari expressed to probation that he had "no history of

23  treatment for any mental health condition and has no particular diagnosis."  Case No. CR14-

24

1   0122RSM, *USA v. Masmari*, Dkt. #11 at ¶ 44 (emphasis added).  Therefore, there is no

2   evidence to support Mr. Masmari's claim that he suffered from any mental illness to an extent

3   that he would have lacked the capacity to form the requisite *mens rea* to commit the crime of

4   Arson.  As a result, he cannot demonstrate that his counsel was unreasonable for advising him

5   to waive indictment and plead guilty to the Information, or that his counsel was therefore

6   ineffective for so advising.

7   　　　With respect to Mr. Masmari's substance abuse issues, there is no dispute that Mr.

8   Masmari was voluntarily intoxicated on the night of the Arson.   However, voluntary

9   intoxication is only a defense to a specific intent crime, and not to a general intent crime.

10  *United States v. Burdeau*, 168 F.3d 352, 356 (9th Cir. 1999); *United States v. Meeker*, 527 F.2d

11  12, 15 (9th Cir. 1975).  The federal crime of Arson is a general intent crime.   *United States v.*

12  *Jane Doe*, 136 F.3d 631, 635-36 (9th Cir. 1998) (holding at common law the crime of arson is a

13  general intent crime, and that the use of the word "maliciously" in the federal arson statute did

14  not change it to a specific intent crime).   Therefore, the defense of voluntary intoxication was

15  not available to Mr. Masmari in this case.  Moreover, at the time of sentencing, Mr. Masmari

16  did not dispute that despite his intoxication he had the requisite intent to set the fire.  Case No.

17  CR14-0122RSM, *USA v. Masmari*, Dkt. #13 at 4 fn. 2.   Accordingly, Mr. Masmari's

18  defense counsel was not ineffective for advising him to waive indictment and plead guilty to

19  the Information.

20  　　　For all of these reasons, the Court DENIES Petitioner's motion to vacate and amend his

21  sentence.

22

23

24

1

## IV.  CONCLUSION

2      The Court, having considered Petitioner's motion, Respondent's response thereto, and

3   the remainder of the record, hereby finds and ORDERS:

4      1)  Petitioner's 28 U.S.C. § 2255 motion (Dkt. #1) is hereby DENIED.

5      2)  The Clerk of the Court is directed to forward a copy of this Order to Petitioner and

6         all counsel of record.

7

8      DATED this 15 day of June, 2016.

9

10                                RICARDO S. MARTINEZ
                                  CHIEF UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24